**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NANCY GAUZZA and MELISSA McCLOSKEY,** | : | |
| **for themselves and all others similarly situated,** | : | **Case No. _____** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **PROSPECT MEDICAL HOLDINGS, INC. and** | : | |
| **DELAWARE COUNTY MEMORIAL HOSPITAL,** | : | |
| **Defendants.** | : | |
| | : | |

## COLLECTIVE / CLASS ACTION COMPLAINT

Nancy Gauzza and Melissa McCloskey ("Plaintiffs"), by and through their undersigned counsel, hereby make the following allegations against Prospect Medical Holdings, Inc. ("Prospect") and Delaware County Memorial Hospital ("DCMH") (collectively, "Defendants") concerning their acts and status upon actual knowledge, and concerning all other matters upon information, belief, and the investigation of their counsel:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to redress Defendants' violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 ("PMWA"), by knowingly suffering or permitting employees with hands-on patient care responsibilities to experience interrupted meal breaks without properly tracking these interruptions or paying overtime wages due for these breaks.[1]

---

[1] Upon information and belief, the following 21 jobs in Prospect's hospitals have hands-on patient care responsibilities and are at issue in this Complaint: CAT Scan Technician, Certified Occupational Therapy Assistant, Clinical Assistant, Diagnostic X-Ray Technician, EEG Technician, EKG Technician, Licensed Practical Nurse, Mammography Technician, Medical Lab Technician, Medical Technologist, MRI Technician, Nuclear Medicine Technician, Nursing Assistant, Occupational Therapist, OR Technician, Physical Therapist, Physical Therapy Assistant, Registered Nurse, Respiratory Therapist, Surgical Technician and Ultrasound Technician.  Plaintiffs reserve the right to revise this list.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the FLSA.

3.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, because these claims arise from the same occurrences and transactions as Plaintiffs' FLSA claim (i.e., Defendants' failure to pay overtime wages owed for interrupted meal breaks) and are so related to this claim as to form part of the same case or controversy.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiffs reside in this District, Plaintiffs worked for Defendants in this District, Plaintiffs suffered the losses at issue in this District, Defendants have significant business contacts in this District relating to its operation of hospitals in Drexel Hill, Ridley Park, Springfield and Upland, PA, Defendants engaged in the wrongful conduct at issue in this District, and actions and omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

5.     Plaintiff Nancy Gauzza is an adult citizen of the Commonwealth of Pennsylvania who resides in Delaware County.  Ms. Gauzza has worked as a full-time Registered Nurse at Delaware County Memorial Hospital ("DCMH") for 33 years, logging 40 or more hours in most or all of her workweeks.  Ms. Gauzza has submitted an opt-in consent form to join this lawsuit. *See* Exhibit A.

6.     Plaintiff Melissa McCloskey is an adult citizen of the Commonwealth of Pennsylvania who resides in Delaware County.  Ms. McCloskey has worked as a full-time CAT

Scan Tech at DCMH for 15 years, logging 40 or more hours in most or all of her workweeks. Ms. McCloskey has submitted an opt-in consent form to join this lawsuit. *See* Exhibit A.

7.     Defendant Prospect is a privately-held Delaware corporation with a principal place of business in Los Angeles, CA. *See* https://pmh.com/about-us/#lenders (accessed July 13, 2017); https://icis.corp.delaware.gov/Ecorp/EntitySearch/Name_Search.aspx (File no. 2336046, accessed July 13, 2017). Defendant Prospect currently owns and operates 19 full-service hospitals in six states, including seven hospitals in California, three hospitals in Connecticut, one hospital in New Jersey, four hospitals in Pennsylvania, one hospital in Rhode Island and three hospitals in Texas. *See* https://pmh.com/hospitals/ (accessed July 13, 2017). During the relevant period, Defendant Prospect was an "employer" of Plaintiffs and the Class members as defined both by the FLSA and the PMWA and was actively engaged in the activities described herein.

8.     Defendant DCMH is a 168-bed hospital that offers a broad range of acute and specialized services. *See* http://www.crozerkeystone.org/Locations/delaware-county-memorial-hospital/ (accessed June 13, 2017). Defendant Prospect acquired DCMH (along with Crozer-Chester Medical Center, Springfield Hospital and Taylor Hospital) in July 2016 by purchasing the Crozer-Keystone Health System. *See* http://www.crozerkeystone.org/about/ (accessed June 13, 2017). Before this acquisition, the Crozer-Keystone Health System had more than 6,000 total employees. *Id.*

## BACKGROUND FACTS

9.     Defendants maintain materially-identical timekeeping and compensation policies for employees with hands-on patient care responsibilities in all their hospitals. Among other things, these policies promise one unpaid, 30-minute meal break per shift and promise that overtime premium wages will be paid for all overtime hours worked. Plaintiffs are familiar with

these policies by virtue of working in one of Defendants' hospitals and discussing meal break and overtime issues with their co-workers and managers.

10.     In keeping with their common policies, Defendants automatically deduct 30 minutes from each shift their hourly employees work, representing an unpaid meal break. Plaintiffs are familiar with this automatic deduction, because they had to be at work for 8½ hours to earn their full wages for an 8-hour shift or be at work for 12½ hours to earn their full wages for a 12-hour shift, and because they discussed the automatic meal break deduction with their co-workers and managers as part of Defendants' day-to-day operations.

11.     Defendants maintain materially-identical policies in all their hospitals that require employees to provide excellent patient care at all times.  Among other things, these policies require hourly employees with hands-on patient care responsibilities to prioritize their patient care duties over their ability to take an uninterrupted meal break.  Plaintiffs are familiar with these policies by virtue of their experience providing patient care in a hospital setting and because, as part of Defendants' day-to-day operations, they discussed the importance of providing excellent patient care and the routine interruption of their meal breaks with their co-workers and managers.

12.     Defendants regularly maintain staffing levels too low for hourly employees with hands-on patient care responsibilities to take a full, uninterrupted meal break off their unit and does not maintain a dedicated staff of rotating relief workers to free hourly employees from their patient care duties for the duration of their meal break.

13.     Defendants maintain materially-identical policies in all their hospitals that ostensibly allow hourly employees to request wages for a missed meal break from their manager. Plaintiffs are familiar with these policies because they received training about their right to claim

4

pay for a missed meal break as part of Defendants' day-to-day operations and infrequently asked their manager to approve "no lunch pay" for a missed meal break.

14.     Defendants do not maintain any policy or procedure in any of their hospitals that allows or requires hourly employees to contemporaneously track, record, or report when they experience a meal break that is interrupted by more than *de minimis* work (an "interrupted meal break").

15.     Defendants do not maintain any policy or procedure that allows or requires hourly employees to request wages for an interrupted meal break.

16.     As a result, although interrupted meal breaks are an almost daily occurrence for hourly employees with hands-on patient care responsibilities in Defendants' hospitals, these employees do not know they have any right to claim pay for an interrupted meal break, do not maintain any contemporaneous records of their interrupted meal breaks, do not claim wages for their interrupted meal breaks, do not receive any wages for their interrupted meal breaks.

17.     This situation is exacerbated because managers in Defendants' hospitals routinely discourage hourly employees from seeking wages for meal break work by, among other things: explaining that any opportunity to eat during a shift, no matter how short, counts as a meal break; suggesting that an employee's inability to take a full meal break is their own fault, or the result of poor time management skills; and requiring advance approval for meal break work despite the unplanned nature of this work and the fact managers are frequently unavailable to provide advance approval at meal times.

## FACTS RELATING TO THE NAMED PLAINTIFFS

18.     Because of Defendants' short-staffing practices, the lack of dedicated relief workers and the constant, unpredictable demands of their work, hourly employees with hands-on patient care responsibilities in Defendants' hospitals rarely receive a full, 30-minute meal break.

5

19.     Over the past three years, Ms. Gauzza has worked as a Registered Nurse in the DCMH NICU and Nursery and is typically scheduled to work two 8½-hour and two 12½-hour shifts each week (40 hours plus four, 30-minute unpaid meal breaks).  Her primary work responsibilities include: providing life-sustaining care for premature and healthy infants by administering medications and nutrients, monitoring vital signs, ensuring proper lung function, communicating with doctors and other hospital staff, providing information and guidance to patients' families, communicating with visitors, answering door calls to provide admission to the unit, answering phone calls, responding to emergency calls and security alarms and completing paperwork relating to her patients' condition and treatment, among other things.

20.     The staffing levels in Ms. Gauzza's units do not provide coverage that allows her to leave and take a full 30-minute meal break off the floor.  Further, Ms. Gauzza's units do not have a dedicated staff of rotating relief workers to free her from her duties for the full duration of her meal break

21.     Because of the often urgent and unpredictable nature of her work and the short-staffing in her units, Ms. Gauzza's meal breaks are interrupted by work about 90% of the time, for an average of about 20 minutes.  On these days, Ms. Gauzza eats her meal on the run, either in-between work-related tasks, or while charting and manning the phones.  No one ever told Ms. Gauzza she was entitled to be paid for an interrupted meal break, so she had no reason to record her interrupted meal breaks or ask to be paid for them.

22.     Despite their extensive knowledge of patient census, patient acuity and staffing levels on her units, Defendants never freed Ms. Gauzza from the need to perform meal break work, provided adequate coverage or relief to permit Ms. Gauzza to take full meal breaks, provided Ms. Gauzza with any training about her entitlement to claim wages for interrupted meal breaks, implemented any procedure to reliably track Ms. Gauzza's interrupted meal breaks, or

implemented any procedure to ensure Ms. Gauzza was paid all wages owed for her interrupted meal breaks.  As a result, Ms. Gauzza did not claim pay for her interrupted meal breaks and Defendants did not pay her for any of this work.

23.     Over the past three years, Ms. McCloskey has worked as a CAT Scan Technologist in the DCMH Radiology Department on the 10:30p.m. to 7:00a.m. shift, five days per week (40 hours plus five, 30-minute unpaid meal breaks).  Her primary work responsibilities include: interpreting doctors' scanning instructions, administering contrast material, preparing and operating CT scan equipment, sending images to Radiologists for interpretation, cleaning and disinfecting patient rooms, communicating with doctors, other hospital staff, patients' families and hospital visitors, answering beeper calls from doctors and nurses and completing required paperwork, among other things.

24.     The staffing levels in Ms. McCloskey's unit do not provide coverage that allows her to leave and take a full 30-minute meal break off the floor.  Further, Ms. McCloskey's unit does not have a dedicated staff of rotating relief workers to free her from her duties for the full duration of her meal break

25.     Because of the often urgent and unpredictable nature of her work and the short-staffing in her units, Ms. McCloskey's meal breaks are interrupted by work about 95% of the time, for an average of about 20 minutes.  On these days, Ms. McCloskey eats her meal on the run, in-between work-related tasks.  No one ever told Ms. McCloskey she was entitled to be paid for an interrupted meal break, so she had no reason to record her interrupted meal breaks or ask to be paid for them.

26.     Despite their extensive knowledge of patient census, patient acuity and staffing levels on her units, Defendants never freed Ms. McCloskey from the need to perform meal break work, provided adequate coverage or relief to permit Ms. McCloskey to take full meal breaks,

provided Ms. McCloskey with any training about her entitlement to claim wages for interrupted meal breaks, implemented any procedure to reliably track Ms. McCloskey's interrupted meal breaks, or implemented any procedure to ensure Ms. McCloskey was paid all wages owed for her interrupted meal breaks.  As a result, Ms. McCloskey did not claim pay for her interrupted meal breaks and Defendants did not pay her for any of this work.

## JOINT EMPLOYMENT ALLEGATIONS

27.     Defendants, acting in a joint venture or as a joint employer with the nineteen Prospect Hospitals, have formulated, approved, controlled and engaged in the improper practices described in this Complaint, so are responsible for these practices.[2]

28.     Defendants and the Prospect Hospitals serve as each other's agents and have worked in concert to accomplish the actions described in this Complaint.

29.     Defendants are actively engaged in the "day-to-day" management of the Prospect Hospitals.

30.     Defendants and the Prospect Hospitals are an integrated enterprise with inter-related operations, systems, policies, practices and labor relations.  One clear example of the extensive coordination among and between the Prospect Hospitals is their use of the same "Coordinated-Regional-Care model", developed and implemented by Prospect.  This model is intended to ensure that "physicians, affiliated medical groups, hospitals and hospitals collaborate closely and in partnership with health plans to provide highly coordinated, personalized care."

---

[2]  The Prospect Hospitals include: Foothill Regional Medical Center, Los Angeles Community Hospital, Los Angeles Community Hospital at Bellflower, Los Angeles Community Hospital at Norwalk, Southern California Hospital at Culver City, Southern California Hospital at Hollywood, Southern California Hospital at Van Nuys, Waterbury Hospital, Manchester Memorial Hospital, Rockville General Hospital, East Orange General Hospital, Crozer-Chester Medical Center, Delaware County Memorial Hospital, Springfield Hospital, Taylor Hospital, Our Lady of Fatima Hospital, Nix Specialty Health Center, Nix Behavioral Health Center and Nix Medical Center.

*See* https://pmh.com/care-model/#solution (accessed June 13, 2017); https://pmh.com/about-us/ (accessed June 13, 2017) (describing emphasis on collaboration).

31.     Defendants require Prospect Hospital employees to follow materially identical policies and procedures relating to timekeeping, meal breaks and prioritizing their patient care responsibilities.

32.     Defendants set or approve the range or amount of wages Prospect hospital employees are paid for their work and also set the policies and procedures relating to the payment of these wages.

33.     Prospect hospital employees are supervised and evaluated in the performance of their work during the strike according to criteria and standards Defendants set or approve.

34.     Defendants do not require any Prospect hospital to track employees' interrupted meal breaks, or cause any Prospect hospital employee to be paid overtime premium wages for their interrupted meal breaks.

35.     Defendants and the Prospect Hospitals are joint employers under the FLSA and PMWA, because they each have the right to: hire and fire employees, set their wages, control their work, direct the manner in which they perform their work, inspect and supervise their work, promulgate policies and procedures governing their employment (including the timekeeping and compensation policies and procedures at issue here) and enforce these policies and procedures.

36.     As a result of their policies and procedures, Defendants willfully fail to track Prospect hospital employees' interrupted meal breaks and willfully fail to pay any overtime premium wages owed for these interrupted meal breaks, reducing their payroll costs and causing direct harm to their employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37.     Plaintiffs bring their FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all hourly employees in Prospect Hospitals during the maximum limitations period who had hands-on patient care responsibilities and worked during one or more unpaid meal breaks without receiving all overtime wages owed for this work.  Plaintiffs reserve the right to amend this collective group definition as necessary.

38.     Plaintiffs are members of the collective group they seek to represent, because they worked in one of Defendants' hospitals during the maximum limitations period, had jobs that involved hands-on patient care responsibilities and worked during many unpaid meal breaks without receiving any overtime wages for this work.

39.     Although Plaintiffs and the collective group members work in different hospitals, have different job titles and different managers, this action may be properly maintained on a collective basis because, among other things:

a.     Plaintiffs and the collective group members all worked in a Prospect hospital;

b.     Plaintiffs and the collective group members were required to comply with the common policies and practices at issue in this case;

c.     Plaintiffs and the collective group members received common training relating to the matters at issue in this case, including a common lack of training about requesting pay for interrupted meal breaks;

d.     Defendants maintained common timekeeping systems and policies with respect to Plaintiffs and the collective group members, and were responsible for maintaining accurate records tracking the hours worked by, and the wages paid to, Plaintiffs and the collective group members, *see* 29 C.F.R. §516.2(a)(7); and

e.      Defendants maintained common payroll systems and policies with respect to Plaintiffs and the collective group members that did not cause or require wages to be properly paid for all interrupted meal breaks.

40.      Plaintiffs and the collective group members do not meet any test for exemption under the FLSA.

41.      Plaintiffs estimate that the collective group, including both current and ex-employees over the relevant period, may include several hundred people.  The precise number of collective group members is available from Defendants' personnel, scheduling, time and payroll records, and from input received from the collective group members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## STATE-LAW CLASS ACTION ALLEGATIONS

42.      Plaintiffs bring their PMWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all Pennsylvania residents who worked as hourly employees in Prospect Hospitals during the maximum limitations period, had hands-on patient care responsibilities and worked during one or more unpaid meal breaks without receiving all overtime wages owed for this work.  Plaintiffs reserve the right to amend their Class definition, or seek certification of individual state-law sub-classes, as necessary.

43.      Plaintiffs are members of the putative Pennsylvania Class, because they are Pennsylvania residents who worked at DCMH in Pennsylvania during the maximum limitations period, had jobs that involved hands-on patient care responsibilities, and worked during one or more unpaid meal breaks without receiving all wages owed for this work.

44.      The members of the putative Pennsylvania Class are so numerous that their joinder would be impracticable.  Defendants own and operate four hospitals in Pennsylvania, *see* Paras. 7-8, above and employ at least several hundred hourly employees with hands-on patient

11

care responsibilities in each of its hospitals, meaning that joining all of the claims presented by the putative Class members would be impracticable.

45.     There are material questions of law or fact common to the members of the putative Pennsylvania Class because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated their legal rights.   Any individual questions that Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

      a.      whether Plaintiffs and the putative Pennsylvania Class members were subject to materially-identical timekeeping and compensation policies that promise hourly employees one unpaid, 30-minute meal break per shift;

      b.      whether Plaintiffs and the putative Pennsylvania Class members were subject to materially-identical timekeeping and compensation policies that promise hourly employees overtime premium wages will be paid for all overtime hours worked;

      c.      whether Plaintiffs and the putative Pennsylvania Class members were subject to materially-identical policies requiring employees to provide excellent patient care at all times and/or prioritize their patient care duties over their ability to take an uninterrupted meal break;

      d.      whether Defendants provided the putative Pennsylvania Class members with any training about requesting wages for an *interrupted* meal break;

      e.      whether Defendants maintain any policies allowing the putative Pennsylvania Class members to request wages for an *interrupted* meal break;

      f.      whether Defendants required or permitted the putative Pennsylvania Class members to track their *interrupted* meal breaks or claim wages for *interrupted* meal breaks;

g.    whether Defendants discouraged the putative Pennsylvania Class members from accurately tracking, or seeking wages for, their *interrupted* meal breaks;

h.    whether Defendants denied Plaintiffs and the putative Pennsylvania Class members overtime premium wages owed under the PMWA;

i.    whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

46.    Plaintiffs' claims are typical of the claims belonging to the putative Pennsylvania Class members.  Plaintiffs are similarly-situated to the putative Pennsylvania Class members because they were subject to the common policies and procedures identified above, and were denied legally-required wages as a result of Defendants' common course of wrongful conduct.

47.    Plaintiffs will fairly and adequately assert and protect the interests of the putative Pennsylvania Class members because: there is no apparent conflict of interest between Plaintiffs and the putative Pennsylvania Class members; Plaintiffs' counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Plaintiffs have adequate financial resources to assure that the interests of the putative Pennsylvania Class members will not be harmed because their counsel has agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

48.    Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the members of the putative Pennsylvania Class members predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are

not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims

49.     Given the material similarity of the claims belonging to the members of the putative Pennsylvania Class members, even if each putative Pennsylvania Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of scores of identical actions.   Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.   Alternatively, proceeding by way of a Class action will permit the efficient supervision of these claims, give rise to significant economies of scale for the Court and the Parties and result in a binding, uniform adjudication on all issues.

50.     Allowing Plaintiffs' claims to proceed in a class action setting is also appropriate because the state wage laws at issue expressly permit private class action lawsuits to recover unpaid regular and overtime wages.

## COUNT I
## <u>Violation of the FLSA</u>

51.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

52.     Plaintiffs and the collective group members are "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1), and are not exempt from the FLSA's protections for any reason.

53.     The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek.  *See* 29 U.S.C. §§ 206-207.

14

54.     The FLSA does not specifically define the term "work", but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue.  *See* 29 C.F.R. §§ 785.11-785.13.  These Principles plainly state that any work an employer "suffers or permits" to be performed at the job site (like Plaintiffs' meal break work) must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed.  *Id.*

55.     Defendants maintain a written policy promising Plaintiffs and the collective group members one 30-minute unpaid meal break per shift.  Having made this promise, Defendants were obligated to ensure either that Plaintiffs and the collective group members were completely relieved from all work-related duties during their unpaid meal break, or that Plaintiffs and the collective group members accurately tracked and recorded their interrupted meal breaks and received all overtime wages due for each interrupted break.

56.     Defendants require Plaintiffs and the collective group members to prioritize their work-related responsibilities over their entitlement to an uninterrupted meal break.

57.     Defendants do not require Plaintiffs and the collective group members to "clock out" before starting their meal break, "clock in" after their meal break, or create any contemporaneous record of the amount of uninterrupted, work-free time they have during any given meal break.

58.     Defendants do not maintain adequate staffing levels or provide dedicated relief workers to ensure Plaintiffs and the collective group members are completely relieved from work-related duties during their entire unpaid meal break.

59.     Defendants do not maintain any policy or procedure requiring Plaintiffs and the collective group members to track or report their interrupted meal breaks, or allowing them to request wages for an interrupted meal break.

15

60.     Defendants do not adequately inform Plaintiffs and the collective group members about their entitlement to seek wages for interrupted meal breaks.

61.     Defendants regularly suffer or permit Plaintiffs and the collective group members to perform more than *de minimis* work during their 30-minute unpaid meal breaks.

62.     Defendants know that Plaintiffs and the collective group members regularly experience interrupted meal breaks because: Defendants maintain policies and procedures that require Plaintiffs and the collective group members to prioritize their patient care duties over their ability to take an uninterrupted meal break; Defendants have ready access to staffing, patient census and patient acuity information suggesting Plaintiffs and the collective group members cannot leave their units to take an uninterrupted meal break; Defendants' managers assign, oversee, or are responsible for the work Plaintiffs and the collective group members do during meal breaks; Plaintiffs and the collective group members routinely perform meal break work in plain sight on Defendants' premises; Plaintiffs and the collective group members perform work (like administering medication, completing electronic forms, or making CAT scans) that creates a readily-available time record during meal periods; and Plaintiffs and the collective group members have spoken to their managers and supervisors about issues relating to meal break work and pay.

63.     Despite having both actual and constructive knowledge that Plaintiffs and the collective group members experience interrupted meal breaks, Defendants have not taken any steps to accurately track their meal break work time, or pay the wages owed for this time.

64.     Plaintiffs and the collective group members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because Defendants regularly and consistently deprive Plaintiffs and the collective group members of overtime wages owed for meal break work they performed in workweeks of 40 hours or more.

16

65.     For all the reasons stated above, Plaintiffs and the collective group members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs respectfully pray for the following relief:

        a.      Appointing Stephan Zouras LLP as Class Counsel;

        b.      Requiring Defendants to provide Class Counsel with an Excel spreadsheet containing the name, employee number, job title, work location, best known mailing address and best known e-mail address for all hourly employees in Prospect Hospitals during the maximum limitations period who had hands-on patient care responsibilities;

        c.      Authorizing Class Counsel to issue a Notice informing the collective group members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

        d.      Finding that Defendants willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiffs and the collective group members;

        e.      Granting judgment in favor of Plaintiffs and the collective group members, and against Defendant, on their FLSA claim;

        f.      Awarding compensatory damages (not including damages for pain and suffering or emotional distress) to Plaintiffs and the collective group members in an amount to be determined;

        g.      Awarding pre-judgment interest and/or liquidated damages to Plaintiffs and the collective group members;

        h.      Awarding Plaintiffs and the collective group members a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

        i.      Granting an injunction requiring Defendants to desist from the wage and hour violations alleged in this Complaint; and

        j.      Awarding any further relief the Court deems just and equitable.

## COUNT II
## Violation of the Pennsylvania Minimum Wage Act

66.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

67.     Defendants are covered employers required to comply with the PMWA's mandates.

68.     Plaintiffs are seeking to recover "wages" as that term is defined by the PMWA.

69.     Plaintiffs and the putative Pennsylvania Class members are employees entitled to the PMWA's protections, and, during the relevant period, were not exempt from receiving wages payable under the PMWA or its enabling Regulations for any reason.

70.     The PMWA and its enabling Regulations require employers to pay all wages owed for every hour worked and to pay overtime compensation at a rate "not less than one and one-half times an employee's regular rate" for all hours worked over 40 in a seven-day "workweek".

71.     The PMWA provides that "any agreement between the employer and the worker" could not serve as a defense to civil actions brought to recover wages owed under the Act.

72.     Defendants violate the PMWA wage payment requirement by knowingly suffering or permitting Plaintiffs and the putative Pennsylvania Class members to work during their unpaid meal breaks without accurately tracking this work or paying all wages owed for it.

73.     Defendants' failure to pay Plaintiffs and the putative Pennsylvania Class members all wages owed for their meal break work violates the PMWA and has caused them to suffer economic harm.

74.     There is no language in the PMWA, no exception to the PMWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law that permits Defendants

18

to avoid paying Plaintiffs and the putative Pennsylvania Class members for their meal break work.  As a result, Defendants had no good faith justification or defense for failing to pay Plaintiffs and the Class members the wages at issue here.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.      An Order certifying this claim to proceed as a class action;

b.      An Order designating Stephan Zouras LLP as Class Counsel;

c.      Judgment in favor of Plaintiffs and the Class members;

d.      An Order awarding Plaintiffs and the putative Pennsylvania Class members all available compensatory damages, including, *inter alia*, all unpaid wages and prejudgment interest owed by Defendants under the PMWA;

e.      An Order requiring Defendants to reimburse Plaintiffs and the putative Pennsylvania Class members for their attorneys' fees and litigation costs;

f.      An injunction prohibiting Defendants from engaging in future violations of the PMWA on this basis;

g.      An Order awarding Plaintiffs and the putative Pennsylvania Class members any further relief the Court deems necessary, just, and proper; and

h.      An Order maintaining jurisdiction over this action after judgment or verdict to ensure Defendants' compliance with the foregoing.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in the above-captioned matter.


                                        Respectfully submitted,

Dated: August 10, 2017                  */s/ David J. Cohen*
                                        David J. Cohen
                                        STEPHAN ZOURAS LLP
                                        604 Spruce Street
                                        Philadelphia, PA 19106
                                        (215) 873-4836
                                        dcohen@stephanzouras.com

                                        Ryan F. Stephan
                                        James B. Zouras
                                        Andrew C. Ficzko
                                        STEPHAN ZOURAS LLP
                                        205 N. Michigan Avenue, Suite 2550
                                        Chicago, IL 60601
                                        (312) 233-1550
                                        rstephan@stephanzouras.com
                                        jzouras@stephanzouras.com

                                        *Counsel for Plaintiffs and the Putative
                                        Collective / Class members*