IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY GAUZZA, MELISSA MCCLOSKEY,** <br>              **Plaintiffs,** <br><br> v. <br><br> **PROSPECT MEDICAL HOLDINGS, INC., DELAWARE COUNTY MEMORIAL HOSPITAL** <br>              **Defendants.** | CIVIL ACTION <br><br><br><br> NO. 17-3599 |

## **MEMORANDUM**

Plaintiffs Nancy Gauzza and Melissa McCloskey move the Court to impose sanctions on Defendants Prospect Medical Holdings and Delaware County Memorial Hospital for Defendants' requiring employees hired after this action commenced to sign arbitration agreements that may preclude those employees from participating in this litigation. Plaintiffs characterize these arbitration agreements as communications with putative class members that are "materially misleading," and that "deprive putative class members of important legal rights, subvert this Court's authority, and require prompt corrective action." For the reasons that follow, the motion will be denied.

    **I.**    **FACTUAL HISTORY**

On August 11, 2017, Plaintiffs filed a Complaint bringing a Fair Labor Standards Act claim on a collective basis and a Pennsylvania Minimum Wage Act claim as a class action, "for all hourly employees in Prospect Hospitals during the maximum limitations period who had hands-on patient care responsibilities and worked during one or more unpaid meal breaks without receiving all overtime wages owed for this work." During the discovery that followed, Defendants produced arbitration agreements for 968 of their employees, 119 of which had been

1

signed after Defendants filed their Answer.

## II.     LEGAL STANDARD AND DISCUSSION

District courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 310 (3d Cir. 2005) (internal quotation marks omitted) ("[T]he district courts must closely monitor the notice process and take steps to safeguard class members from unauthorized and misleading communications from the parties or their counsel."). This authority extends to collective actions as well, where district courts must "oversee the joinder of additional parties to ensure that the task is accomplished in an efficient and proper way," particularly where "employees receiving accurate and timely notice concerning the pendency of the collective action" will affect whether they "can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989) (discussing ADEA collective action); *see also Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 374 n.1 (5th Cir. 2016) (applying *Hoffman-La Roche* to FLSA collective action). However, restrictions on parties' communications with potential class members should address "potential abuse[]" and be based on "a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101-02. Moreover, in the absence of some abuse or irregularity, arbitration agreements that indicate the parties' "intention to use individualized rather than class or collective action procedures," are to be "enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 1632 (2018).

Plaintiffs ask the Court to exercise this "managerial responsibility," *Hoffman-La Roche*, 492 U.S. at 171, to sanction Defendants for entering into arbitration agreements with employees after this action had commenced, contending that these arbitration agreements were

2

impermissible because they misled or hid information from putative class and collective action members.

Plaintiffs make two principal arguments, both of which are unavailing. First, they argue that all arbitration agreements imposed after the onset of litigation are "inherently confusing, misleading, coercive, and designed to thwart the rights of employees," and cite five cases purportedly supporting that proposition. None of the cases, however, stand precisely for the broad proposition for which they are cited. Instead, each focuses on specific facts that may lead such agreements to become improper, such as "roll[ing] out [a] policy in a 'blitzkrieg fashion,'" *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 919 (11th Cir. 2014), only "requir[ing] potential members of [the] collective action to agree to the . . . policy," *id.*, requiring employees to "opt-out" of an agreement, *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013), and "introduc[ing]" the agreement "during the pendency of litigation," *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, *3 (S.D. Cal. Mar. 8, 2012). Plaintiffs have not identified specific facts here that suggest the arbitration agreement was "rolled out . . . in a 'blitzkrieg fashion,'" required employees to "opt-out," was "introduced during the pendency of litigation," or was otherwise improper. Absent such facts, the arbitration agreements are not *per se* impermissible.[1]

Second, Plaintiffs try to identify "potential abuse[s]," *Gulf Oil*, 452 U.S. at 102, that are specific to the communication at issue here. They focus primarily on the idea that the

---

[1] In supplemental briefing, Plaintiffs double down on this argument, asserting that "there is a critical difference between arbitration agreements instituted in the normal course when no litigation is pending and those disseminated after a class action lawsuit has been filed," urging the Court to conclude that arbitration agreements disseminated without court approval after a class action has been filed are categorically improper. But in support of that claim, Plaintiffs merely point out that two seminal arbitration cases, *Epic Systems* and *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981), only involved "arbitration agreements procured before the litigation was instituted." Be that as it may, nothing Plaintiffs cite stands for the broad proposition that arbitration agreements entered during the course of litigation are *never* permissible; rather, they become impermissible when some additional fact makes them confusing, misleading, coercive, or otherwise inappropriate.

communication (that is, the arbitration agreement itself), "intentionally omit[s] known, material information about the existence of this lawsuit and the nature of Plaintiffs' claims." But the communication is simply Defendants' standard arbitration agreement, and Defendants represent in a sworn affidavit that they have had a standing policy under which they require "all new hire, non-union caregivers at [Delaware County Memorial Hospital]—before they begin working in their roles—to sign [it]," and that this policy was in place for more than a year before Plaintiffs brought this action. Putting these two pieces together, then, Plaintiffs appear to assert that in order for Defendants to continue their practice of requiring new hires to sign arbitration agreements, Defendants must inform those new hires of this lawsuit. This argument is unpersuasive. It is not inherently abusive for Defendants to continue their preexisting policy of requiring new hires to sign arbitration agreements as a condition for employment. *See Epic Systems*, 138 S. Ct. at 1632 (holding that arbitration agreements that foreclose class and collective actions are enforceable); *cf. Balasanyan*, 2012 WL 760566, at *3 (indicating that, unlike continuing a pre-existing policy of requiring arbitration agreements, it may be abusive to implement a new policy after litigation has been initiated); *Billingsley*, 560 F. App'x at 922-23 (same).

Plaintiffs also seek to show that Defendants' arbitration agreement is abusive by likening it to the one held improper in *Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 WL 2713741 (E.D. Pa. July 13, 2011). While the case does not support their position, its reasoning is instructive. There, the court identified several concrete aspects of the arbitration agreement that were misleading or confusing, including: the agreement's own internal inconsistencies; specific references to the litigation at issue; self-effectuating language; and the length, font size, and complexity of the language. *Id.* at *1-2. By contrast, the agreement here is not internally

inconsistent, does not reference this litigation, does not contain self-effectuating language,[2] and does not contain sufficiently complex, lengthy, or small-type language to make the communication misleading or abusive.

In sum, Plaintiffs have failed to show that Defendants' continuation of a pre-existing practice of requiring all new hires to sign arbitration agreements qualifies as an "unauthorized and misleading communication[]," *Bank of N. Va.*, 418 F.3d at 310, and therefore the motion will be denied.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

Date:  October 4, 2018                                    WENDY BEETLESTONE, J.

---

[2] While Plaintiffs assert that the communication does contain self-effectuating language analogous to the language in *Williams*, they are mistaken.  The language in *Williams* was self-effectuating because it would become effective *even if the employee chose not to sign it*, 2011 WL 2713741, at *2 ("To opt out of the Agreement, the employee must call a toll-free telephone number within 30 days of the date the employee received the Agreement."), whereas the language here contains no such provision.