**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NANCY GAUZZA and MELISSA McCLOSKEY,** | : | |
| **for themselves and all others similarly situated,** | : | **Case No. 17-cv-3599-WB** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **PROSPECT MEDICAL HOLDINGS, INC. and** | : | |
| **DELAWARE COUNTY MEMORIAL HOSPITAL,** | : | |
| **Defendants.** | : | |
| | : | |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
INCLUDING ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

Nancy Gauzza and Melissa McCloskey ("Named Plaintiffs"), 593 Opt-In Plaintiffs (collectively "Plaintiffs"), Prospect Medical Holdings, Inc. and Delaware County Memorial Hospital[1] ("Defendants") (collectively, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The Parties have negotiated a settlement to resolve this *bona fide* FLSA dispute after several years of contentious litigation, substantial discovery informing the Parties' assessment of their litigation positions and damage calculations, extensive arm's-length negotiations conducted by counsel well-versed in wage and hour litigation and a private mediation session overseen by an experienced third-party neutral.

The Parties respectfully submit that the terms of their proposed settlement are fair, reasonable and adequate – particularly in light of the existence of disputed issues of fact and law with respect to liability and damages, uncertainty as to whether each Plaintiff would be able to

---

[1] Delaware County Memorial Hospital was acquired by Defendant Prospect Medical Holdings, Inc. in July 2016. Since that time, Delaware County memorial Hospital has been the trade name of Prospect DCMH, LLC.

obtain a judgment in his or her favor and the necessary risks and delays associated with trial and any subsequent appeals.

## I.  BACKGROUND

### A.  Procedural History

On August 10, 2017, Named Plaintiffs filed a putative class and collective action Complaint against Defendants, alleging violations of the FLSA and PMWA.  *See* Complaint [Doc. 1].  Named Plaintiffs alleged that they and other hourly employees with "hands-on" patient care responsibilities had been subjected to common policies and procedures that deprived them of overtime wages for more than *de minimis* meal break work in full-time weeks and that Defendants, aware of this situation, were responsible for knowing wage violations.  *Id.* at ¶¶ 9-17 [Doc. 1]. Defendants filed an Answer on October 13, 2017 generally denying Named Plaintiffs' allegations. *See* Answer [Doc. 10].  Beginning in October 2017, the Parties began to exchange discovery requests, responses and productions.  Defendants deposed the Named Plaintiffs in mid-2018.

On October 26, 2018, the Court entered an Order granting conditional certification pursuant to 29 U.S.C. § 216(b) for a class of Prospect employees in Connecticut, New Jersey, Pennsylvania and Texas, [Doc. 58], after which Plaintiffs disseminated a Court-approved FLSA notice to current and former employees in these states.  Plaintiffs' counsel ultimately filed consent forms for 593 Opt-In Plaintiffs.  *See* [Docs. 68-78, 79-84, 86, 87-90, 92-93, 96, 98-114, 118-120, 151].  The Parties subsequently commenced merits discovery, which included the production of extensive company-wide and hospital-specific policies, time records, payroll records and other data relating to the Opt-In Plaintiffs.

On June 25, 2020, the Parties participated in a full-day mediation session with Hon. Morton Denlow (Ret.) of JAMS.  During this mediation, the Parties reached agreement on the material

terms of a settlement that has been expanded into the Settlement Agreement now presented for this Court's approval.  *See* Settlement Agreement (Exhibit A).

### B.      Nature of Plaintiffs' Claims

Plaintiffs allege that Defendants promise one unpaid, 30-minute meal break per shift and automatically deduct 30 minutes from each shift their hourly employees work, representing an unpaid meal break.  *Id.* at ¶¶9-10 [Doc. 1].  Plaintiffs further allege that, although Defendants maintain policies that allow hourly employees to request wages for a missed meal break, they do not maintain any policy that allows or requires hourly employees to request wages for an interrupted meal break.  *Id.* at ¶¶14-15, 59.  As a result, Plaintiffs allege that Defendants do not maintain contemporaneous records of their hourly employees' interrupted meal breaks and do not pay any wages for these employees' interrupted meal breaks.  *Id.* at ¶¶13-16.  Some Opt-In Plaintiffs are full-time workers who routinely log 40 on-the-clock hours per week.  Other Opt-In Plaintiffs are scheduled to work less than 40 hours per week but, with varying frequency, pick up additional shifts, partial-shifts or other work such that their total hours in any given week may exceed 40.  *See* Complaint at ¶¶5-6, 19, 23, 64 [Doc. 1].  All Plaintiffs allege that Defendants violated the FLSA by depriving them of wages owed for the overtime work they performed during interrupted meal breaks.  *Id.*

### C.      Legal Background

The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek.  *See* 29 U.S.C. §§ 206-207.  The FLSA does not specifically define what is meant by the term "work", *id.*, but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue.  *See* 29 C.F.R. §§ 785.11-785.13.  These principles state that

any work an employer "suffers or permits" to be performed must be counted as hours worked when

the employer "knows or has reason to believe" the work is being performed:

### § 785.11 General.

*Work not requested but suffered or permitted is work time*. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. *The employer knows or has reason to believe that he is continuing to work and the time is working time* (citations omitted).

### § 785.12 Work performed away from the premises or job site.

*The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.*

### § 785.13 Duty of management.

*In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them.* The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

….

### § 785.19 Meal.

Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. *The employee must be completely relieved from duty* for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. *The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating*. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

*See* 29 C.F.R. §§ 785.11-13, 785.19 (emphasis added).  Plaintiffs allege that Defendants violated

the FLSA and its implementing Regulations because they did not pay Plaintiffs and the Class

Members, as defined in the Settlement Agreement, for all of the meal break work they performed.

4

Defendants deny violating the FLSA with respect to Plaintiffs' meal break work.  The Court has not made any substantive ruling on whether Defendants violated the FLSA in any respect.

## II.    THE PARTIES' PROPOSED SETTLEMENT

The Parties, with the assistance of Mediator Hon. Morton Denlow (Ret.), negotiated a maximum gross settlement amount payment of $1,900,000.00 to resolve Plaintiffs' claims.  As outlined in the Agreement, the Parties propose to distribute this sum as follows:

1.  At least $1,174,276.60 (62%) as damages allocated on a *pro rata* basis to the Settlement Class Members;

2.  Up to $665,000.00 (35%) as attorney's fees to Plaintiffs' Counsel;

3.  Up to $30,723.36 as a cost reimbursement to Plaintiffs' Counsel, including approximately $8,000.00 in settlement administration fees; and

4.  Up to $30,000.00 in Service Awards to the two Named Plaintiffs ($15,000.00 each) for services rendered to the Class.

*See* Settlement Agreement at § 3 (Exhibit A).

The $1,174,276.60 allocated for Class Member damages represents a fair and reasonable result because of uncertainty surrounding whether Plaintiffs would receive final FLSA certification; whether Plaintiffs could prove the merit of their FLSA claim and/or an intentional FLSA violation; whether Plaintiffs could prove how much time the Class Members worked during interrupted meal breaks and whether this work was done in 40-hour workweeks; and because of the unknown additional risks, costs and delays associated with continuing the litigation.  Without admitting or conceding liability or damages, Defendants concur that pursuing a settlement is appropriate given the potentially-significant burden, expense and uncertainty of continuing the litigation.

By receiving the checks provided under the Settlement Agreement, the Named and Opt-In Plaintiffs will release Defendants from "any claim [plaintiff has] or may have from the date three

years prior to the date that [plaintiff] opted-in to this litigation through the date that the Court approved the settlement" against Defendants "as asserted in this litigation or that could have been asserted in this litigation under the FLSA and the PMWA, based on the allegations in the Complaint, including any claims for the nonpayment or underpayment of wages and overtime compensation under any federal, state, or local wage and hour laws such as the FLSA, the PMWA, and any and all rules and regulations issued thereunder through the date on which the Court grants approval of the settlement." *See* Settlement Agreement at § 4.1 (Exhibit A).

## III.   THE COURT SHOULD GRANT FINAL FLSA CERTIFICATION TO THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

The Court has previously granted conditional FLSA certification to the Class Members' unpaid meal break claim.  October 26, 2018 Order [Doc. 58].  As a condition of approving the Parties' settlement, the Court must find the Class Members merit final FLSA certification.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011).[2]

The standard applied at the final certification stage "is whether the proposed collective plaintiffs are 'similarly situated.'"  *Wood v. AmeriHealth Caritas Servs., LLC*, 2020 WL 1694549, *7 (E.D. Pa. Apr. 7, 2020).  The factors relevant to this inquiry include: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar

---

[2]  The standard for certifying a settlement class is lower than for a litigation class since there are no manageability concerns.  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) ("The proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws"); *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 99235, at *45 (E.D. Pa. July 29, 2016) ("Following *Amchem Products, Inc. v. Windsor*, we apply a more generous standard to the manageability question when certifying a class for purposes of settlement only"); *Newberg On Class Actions* § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled").

salaries and circumstances of employment." *Wood*, 2020 WL 1694549 at *7. Where final

certification is not opposed, the Class Members advance the same claims and worked under similar

circumstances of employment, final certification may be granted without an exhaustive inquiry.

*Id.*.[3]

The Class Members in this action were not all employed in "the same" location, but worked

in Defendants' hospitals in Connecticut, New Jersey, Pennsylvania and Texas. Similar facts have

been repeatedly held to satisfy the "similarly situated" requirement for purposes of final FLSA

certification. *See*, e.g., *Wood*, 2020 WL 1694549, at *7 (class members "were all Clinical Care

Reviewers and Clinical Care Reviewer Seniors for Defendant"); *Alvarez v. BI Inc*., 2020 WL

1694294, *4 (E.D. Pa. Apr. 6, 2020) ("Opt-In Plaintiffs… worked as ISAP Case Specialists at

Defendant's offices around the country"); *Hall v. Accolade, Inc*., 2020 WL 1477688, *7 (E.D. Pa.

Mar. 25, 2020) ("all members of the Collective worked as health assistants employed by

Accolade").

The Class Members in this action all advance the same claim (*i.e.,* that they were not paid

overtime wages for work they performed during interrupted meal breaks) and seek the same form

of relief (*i.e.,* recovery of unpaid overtime wages). *See* Complaint at ¶¶13-16 [Doc. 1]. Class-

wide claims for unpaid overtime are routinely held to satisfy the "similarly situated" requirement

for purposes of final FLSA certification. *See*, e.g., *Wood*, 2020 WL 1694549, at *7 (all class

members claim "they were misclassified as overtime-exempt and not paid for overtime"); *Alvarez*

*v. BI Inc*., 2020 WL 1694294, *4 (E.D. Pa. Apr. 6, 2020) (plaintiffs claim "unpaid off-the-clock

---

[3] In *Wood*, for example, the Court granted final FLSA certification to the FLSA Collective for settlement purposes with minimal analysis: "No one has opposed final certification of Plaintiffs' FLSA collective. All its members advance the same claims – that they were misclassified as overtime-exempt and not paid for overtime. They were all Clinical Care Reviewers and Clinical Care Reviewer Seniors for Defendant with similar employment circumstances."

work, on-call time, and time related to home visits"); *Hall v. Accolade, Inc*., 2020 WL 1477688, *7 (E.D. Pa. Mar. 25, 2020) ("all members of the Collective advance the same claims - that they were… underpaid for overtime").

Finally, the Class Members in this action received similar salaries and had similar circumstances of employment. *See* Complaint at ¶¶ 9-17 [Doc. 1]. The Class Members were all paid on an hourly basis and worked in positions that consistently required them to provide hands-on patient care in Defendants' hospitals. *Id.* [Doc. 1]. The Class Members also worked under similar payroll policies and the vast majority of them earned a wage between $20.00 and $55.00 per hour suggesting that, for purposes of this analysis, they received "similar salaries." *See Alvarez*, 2020 WL 1694294, at *4 ("SAP Case Specialists shared the same responsibilities, pay, training, and management structure"); *Hall*, 2020 WL 1477688, at *7 ("because all Collective members were health assistants, they had sufficiently similar salaries and circumstances of employment"); *Beauregard v. Hunter*, 2019 WL 9355826, *5 (D.N.J. Sept. 27, 2019) ("Even where there are individual differences among plaintiffs, as long as a common plan is apparent, a class can be certified").

As a result, the Parties concur that final FLSA certification is warranted for settlement purposes because the FLSA Collective members worked for Defendants in a similar setting, in similar jobs and under similar terms and conditions of employment. These facts support a grant of final FLSA certification for settlement purposes.

## IV.    STANDARD FOR FLSA SETTLEMENT APPROVAL

Because the Third Circuit has not yet weighed in on the issue, courts in this Circuit adhere to the FLSA approval process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Applying this process, the Court must determine

whether the proposed settlement of Plaintiffs' FLSA claims "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Altnor v. Preferred Freezer Services, Inc*., 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016) (internal quotations omitted), *quoting Lynn's Food Stores Inc.,* 679 F.2d at 135. *See Waltz v. Aveda Transportation & Energy Servs*. Inc., 2017 WL 2907217, *2 (M.D. Pa. July 7, 2017)* ("Under the FLSA, a dispute is "*bona fide*" where "there is some doubt as to whether the plaintiff would succeed on the merits at trial").

A proposed settlement resolves a *bona fide* dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Id*. "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). "If the Court determines that the settlement concerns a '*bona fide* dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth*., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).

## V.    THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

### A.    The Parties' Settlement Represents The Resolution of A *Bona Fide* Dispute

Plaintiffs and the Class Members claim they were not paid overtime wages owed for their interrupted meal breaks under common policies and procedures while Defendants maintain they paid Plaintiffs and the Class Members for all work they performed. *Cf.* Plaintiffs' Motion for Order Authorizing Notice [Doc. 39-1] *with* Defendants' Opposition to Plaintiffs' Motion for Conditional Certification [Doc. 50]. This case has involved contentious litigation on multiple

fronts, including: whether Defendants' policies and systems vary materially from unit to unit or facility to facility; whether Plaintiffs and the Class Members are subject to arbitration agreements; whether Plaintiffs and the Class Members can validly claim an entitlement to overtime wages when many of them worked less than full-time schedules; how Plaintiffs and the Class Members would prove their performance of work that was not captured by any contemporaneous records and whether Defendants are entitled to an offset for all of the meal break and/or overtime wages they paid to Plaintiffs and the Class Members (*i.e.,* for completely missed meal breaks or otherwise).

The Parties have spent significant time and effort on discovery, including several rounds of written discovery requests, Defendants' production of almost 75,000 pages of documents and extensive wage and hour data relating to Plaintiffs and the Class Members, depositions of Named Plaintiffs and extensive damages calculations and analysis. Had the Parties' mediation failed, these disagreements would have become *bona fide* factual and legal disputes for the Court to resolve in addition to any future disputes concerning motions for final FLSA certification, motions for decertification, pre-trial evidentiary disputes, and jury instructions.

Further, considering the pleadings as well as the representations and recitals in the proposed Settlement Agreement, the Parties' proposed settlement represents a reasonable compromise of disputed claims. Plaintiffs alleged that class members performed more than *de minimis* meal break work for Defendants' benefit when they experienced interrupted meal breaks and that they were not properly compensated for this work. *See* Complaint. at ¶¶9-17 [Doc. 1]. However, as set forth in the Settlement Agreement, Defendants "vigorously deny liability and have agreed to the terms of settlement without, in any way, acknowledging any fault or liability." Settlement Agreement at § 7 (Exhibit A). Accordingly, it is clear that this settlement resolves the claims of a *bona fide* dispute.

**B.      The Parties' Proposed Settlement Is Fair and Reasonable**

District courts in the Third Circuit have considered the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975), which establishes criteria to evaluate the fairness of proposed class action settlements. *Bettger v. Crossmark, Inc.*, 2015 WL 279754, *7 (M.D. Pa. Jan. 22, 2015). The *Girsh* Factors include: the complexity, expense, and likely duration of the litigation; the reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the risks of maintaining the class action through the trial; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157–58.  This Court should approve the Parties' proposed settlement because, as discussed below, all of the *Girsh* factors either weigh in favor of approval or do not suggest the Parties' proposed settlement is unfair.

**1.      The settlement as a whole is fair and reasonable**

Here, the settlement is fair and reasonable in light of all the applicable factors. Defendants have agreed to pay a Gross Settlement Amount of $1,900,000.00, which represents approximately 30% of Plaintiffs' maximum damages calculation (assuming one hour of unpaid overtime work per week for every Class member <u>every week</u> from August 2014 to June 2020, when the settlement was reached).  The Settlement would result in the payment of at least $1,174,276.60 in damages to 593 Named and Opt-In Plaintiffs, or an average payment of approximately $1,980.22 per Plaintiff.  *See* Settlement Agreement at § 3.5.1 (Exhibit A).  To foster an equitable distribution, Plaintiffs propose to distribute the settlement fund *pro rata*, based on the number of weeks they worked during the Relevant Time Period as determined by the Administrator.  *Id.*

The Parties negotiated their proposed settlement with due consideration for many issues, including: the complexity, risk, expense, likely duration of this litigation absent a settlement; the difficulty of proving damage calculations based on claimed off-the-clock work; the likelihood that many Class Members worked less than a full-time schedule, so would not have been entitled to overtime damages each week (or in many weeks); Defendants' contractual entitlement to arbitrate approximately 100 Class Members' claims; and the value of the settlement fund in light of Plaintiffs' best possible recovery.  Further, while the Parties have dedicated a significant amount of time, effort, and money to their discovery efforts, continuing the case without settlement would lead to further discovery, prolong the litigation and increase costs.  Additionally, since this action has not yet reached the final certification phase, continuing without resolution would present significant risks, delays and uncertainty on both sides concerning final certification, merits and damages issues.

The Parties' settlement is not the product of fraud or collusion.  The Parties negotiated their Agreement through experienced attorneys well-versed in class wage and hour litigation, in an arm's-length, adversarial proceeding overseen by Hon. Morton Denlow (Ret.).  Counsel negotiated compromises and concessions on numerous monetary and non-monetary terms before, during and after the mediation and were ultimately able to reach the settlement embodied in their Settlement Agreement.

The amount of the settlement is reasonable in relation to the potential recovery.  As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain.  Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, the Parties' and their witnesses' credibility, their work schedules and ability to demonstrate an entitlement to unpaid overtime wages, limitations in the available data and Defendants' knowledge, willfulness and good faith.  In particular here, establishing

damages would prove risky where many Class Members were regularly assigned a sub-40-hour weekly work schedule and would only be entitled to recover overtime damages in weeks they were able to establish their performance of substantial additional work.

### 2. The Service Awards for Named Plaintiffs are fair and reasonable

The Agreement provides for Service Awards of up to $30,000.00 for the Named Plaintiffs ($15,000.00 each), in recognition of their service to the Class Members. Factors that courts consider when analyzing incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's benefit as a member of the class. *See Vista Healthplan, Inc. v. Cephalon, Inc.,* 2020 WL 1922902, *33 (E.D. Pa. Apr. 21, 2020); *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, *3 (E.D. Pa. June 4, 2014); *Altnor*, 197 F. Supp. 3d at 771 ("the incentive award must be related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit") (internal quotations omitted).

The Parties agree that Named Plaintiffs are entitled to Service awards in this action because they accepted financial and reputational risks by stepping forward to commence, join and support this litigation. The Named Plaintiffs were directly and regularly involved in this litigation, performing tasks such as: producing documents to describe and confirm their claims, assisting with the review of case documents to inform litigation strategy, speaking with putative class members and encouraging their cooperation and assistance in the prosecution of this case, reviewing pleadings for accuracy, providing declarations in support of motions, responding to written discovery requests, appearing for deposition, assisting in preparations for settlement

negotiations and reviewing the fairness of Defendants' settlement proposals. Further, both Named Plaintiffs maintained their level of involvement throughout the three years this litigation has been pending. Accordingly, the Named Plaintiffs' Service Awards represent a fair and reasonable amount in consideration for their efforts in this matter and is consistent with similar awards approved in this Circuit. *See Alvarez v. BI Inc.*, 2020 WL 1694294, *7 (E.D. Pa. Apr. 6, 2020) ("a service payment of $15,000 is in line with what the courts in this Circuit have approved in other FLSA collective and class actions") (citing cases); *Tavares v. S-L Distrib. Co., Inc.*, 2016 WL 1743268, *9 (M.D. Pa. May 2, 2016) (granting $15,000 service award to each of two named plaintiffs).

### 3.    Attorneys' fees and costs are fair and reasonable

The settlement provides for the payment of attorneys' fees and costs to Plaintiffs' Counsel. Judicial review of attorneys' fees is required "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Farris v. Nat'l Forensic Consultants, Inc.,* 2019 WL 2502267, *4 (E.D. Pa. Apr. 24, 2019). *quoting In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, *4 (E.D. Pa. Mar. 7, 2014). Percentage-of-recovery is the prevailing method used by courts in the Third Circuit to assess attorneys' fees in wage and hour cases. *Howard*, 197 F. Supp. 3d at 780. The Third Circuit has set forth seven factors for evaluating the appropriateness of an attorneys' fee award under the percentage of recover method: the size of the fund created and the number of persons benefitted; the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; the skill and efficiency of the attorneys involved; the complexity and duration of the litigation; the risk of nonpayment; the amount of time devoted to the case by plaintiffs' counsel; and awards in similar cases. *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 (n. 1) (3d Cir. 2000).

Here, the proposed settlement provides for payment of up to $665,000.00 in attorneys' fees, representing 35% of the settlement value. Courts in this Circuit have held that "fee awards for common fund cases generally range from 20-45% of the fund." *Crevatas v. Smith Mgmt. & Consulting, LLC*, 2017 WL 1078174, *5 (M.D. Pa. Mar. 22, 2017); *Mabry v. Hildebrandt*, 2015 WL 5025810, *4 (E.D. Pa. Aug. 24, 2015) (approving fee of 40%); *Waltz*, 2017 WL 2907217, *4 (approving fee of 31.28%); *Rouse v. Comcast Corp.,* 2015 WL 1725721, *12 (E.D. Pa. Apr. 15, 2015) (approving fee of 35%); *Lyons v. Gerhard's Inc*., 2015 WL 4378514, *5 (E.D. Pa. July 16, 2015) (approving fee of 44%); *Redden v. King's Corner Pub*, LLC, 2017 WL 4883177, *2 (E.D. Pa. Oct. 27, 2017) (approving fee of 36%). "An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit." *Creed v. Benco Dental Supply Co*., 2013 WL 5276109, *6 (M.D. Pa. Sept. 17, 2013).

A 35% fee is within the range typically approved in this Circuit and takes into account the duration of this litigation, the amount and quality of work performed to date and the risk that Plaintiffs' Counsel would have recovered nothing from a losing effort. Plaintiffs' Counsel dedicated 1,262.6 hours to this case over a period of 43 months on a wide range of activities that includes: discovering and investigating the facts underlying Plaintiffs' claims, communicating with class members, drafting the Complaint, preparing initial disclosures, conferring on a case schedule and drafting the Rule 26(f) report, pursuing a protective order relating to Defendants' class member interview campaign, engaging in extensive conditional certification discovery, litigating Plaintiffs' FLSA conditional certification motion, motion practice relating to Defendants' effectuation of an arbitration program, supervising the notice mailing and opt-in efforts, drafting tolling and confidentiality agreements, participating in various scheduling conferences and drafting scheduling stipulations and orders, litigating Defendants' motions to strike late opt-ins, engaging in extensive merits and damages discovery, defending Named Plaintiffs' depositions, performing class-wide damage calculations,

engaging in mediation, discussing notice dissemination and settlement administration issues and logistics, drafting the settlement agreement, conferring with defense counsel about settlement approval issues and drafting the Parties' settlement approval papers. *See* Declaration of David J. Cohen, ¶¶ 7-8 ("Cohen Dec.") (Exhibit B). Plaintiffs respectfully submit that, in light of all the relevant considerations, the requested fee award of $655,000.00 is fair and reasonable compensation for their work and the risks they accepted in undertaking Plaintiffs' representation.

The Third Circuit also suggests that "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *Creed*, 2013 WL 5276109, at *6. "The cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Even when used as a cross-check, courts should "explain how the application of a multiplier is justified by the facts of a particular case." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998).

As of the date of filing, Plaintiffs' Counsel have spent more than 1,262.6 hours on this matter which, billed at their typical and customary rates, provides a total lodestar of $630,392.50. *See* Cohen Dec. at ¶7 (Exhibit B). Since the Parties' Settlement Agreement provides for an attorney's fee of up to $655,000.00, if awarded, this would provide a multiplier of 1.039 on Plaintiffs' Counsel's current lodestar.[4]

"Lodestar multipliers ranging from one to four are frequently awarded in the Third Circuit." *See Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, *11 (E.D. Pa. Aug. 26,

---

[4] Because of the need to prepare this submission for circulation to all Parties and counsel before the filing date, Plaintiffs' fee request does not include all time spent in the week leading up to this filing, nor does it reflect any time spent by Plaintiffs' counsel preparing for, or participating in, the final approval hearing, or on any legal or administrative tasks that will be necessary hereafter to finalize and effectuate the settlement. *See* Cohen Dec. at ¶14 (Exhibit B).

2019) (approving 1.09 multiplier), *citing Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("The Third Circuit has also recognized that 'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied'").

Applying a multiplier of 1.039 to the fee paid Plaintiffs' counsel in this case is appropriate for several reasons, including that: Plaintiffs' counsel achieved an extremely favorable settlement for the Class Members; Plaintiffs' counsel took this case on a contingent basis, so faced a significant risk of recovering nothing for their efforts; and Plaintiffs' counsel have not received any payment for their efforts across the almost four-year span of this litigation. These facts regularly support the application of fee multipliers between one and four. *See, e.g., Harshbarger v. Penn Mut. Life Ins*. Co., 2017 WL 6525783, *6 (E.D. Pa. Dec. 20, 2017) (approving 3.67 multiplier); *Devlin v. Ferrandino & Son, Inc*., 2016 WL 7178338, *10 (E.D. Pa. Dec. 9, 2016) (approving 2.32 multiplier); *Cikra v. LaMi Prod., LLC*, 2016 WL 9776077, *2 (E.D. Pa. Nov. 10, 2016) (approving 2.16 multiplier). Thus, a lodestar cross-check supports the reasonableness of Plaintiffs' requested attorney's fee.

Finally, this Settlement Agreement would provide Plaintiffs' counsel with a cost recovery of $22,723.36, representing their actual, "out-of-pocket" expenses in this case plus $8,000.00 in as-yet-unpaid settlement administration costs. *See* Agreement § 3.2; Cohen Dec. at ¶15 (Exhibit B). It is well-established that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action. *Craig v. Rite Aid Corp*., 2013 WL 84928, *11 (M.D. Pa. Jan. 7, 2013) (approving reimbursement of costs for "legal research, discovery, travel, depositions, mediation, meals, transportation, court fees, mailing, postage, and telephone [services]" over a four-year period). Here, counsel seeks reimbursement of both reasonable and necessary costs of litigation, and

provides affidavits and invoices which attest to the same.

As described in their Declaration, Plaintiffs' counsel incurred $22,723.36 in out-of-pocket costs relating to this lawsuit between February 2017 and the present, which includes mediation fees, class notice mailing costs, deposition transcript fees, legal research fees, travel costs, filing fees, meeting costs and postage costs. *See* Cohen Dec. at ¶15 (Exhibit B). Plaintiffs' counsel paid these expenses on a contingent basis, risking their recovery on the outcome of this litigation, and have not received any cost payment or reimbursement of any sort throughout the duration of this case. Further, the Agreement identifies the numerous duties to be performed by the Settlement Administrator in the context of this settlement (*i.e.,* formatting, printing, and mailing notice packets, calculating individual settlement amounts based on workweeks, distributing checks, determining and remitting tax withholdings, communications with counsel for the Parties and Settlement Class Members, and performing other activities and services associated with the administration of the settlement), all of which supports its entitlement to the requested $8,000.00 fee. *See* Settlement Agreement at § 2.2 (Exhibit A).

### C.    The Agreement Furthers Implementation Of The FLSA In The Workplace

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc*., 679 F.2d at 1352. Judicial approval of a settlement is necessary in order to ensure that the compromise "furthers implementation of the FLSA in the workplace." *Brumley v. Camin Cargo Control, Inc*., 2012 WL 1019337, *4 (D.N.J. Mar. 26, 2012). Courts generally find that fair and reasonable FLSA settlements promote the FLSA's purpose so long as they avoid restrictive confidentiality clauses and impermissibly broad release provisions. *See, e.g., Mabry,* 2015 WL 5025810, at *3 (rejecting confidentiality clauses that promoted "silencing employees who have vindicated their rights under the FLSA."); *Kraus*, 155 F.

Supp. 3d at 532–33 (rejecting overly broad release provision that precluded plaintiffs from raising "any and all" claims arising from a "laundry list of charges").

Although the Parties' proposed Settlement contains a confidentiality clause, the clause in question is limited in duration and only requires confidentiality until the filing of this Motion. *See* Settlement Agreement at § 6 (Exhibit A). Further, Plaintiffs cannot be sanctioned for violating the confidentiality provision. *See Waltz*, 2017 WL 2907217, at *3 (narrowly tailored confidentiality clause does not frustrate the purpose of the FLSA where defendant could not sanction plaintiffs for violating it). Therefore, the Parties' Agreement retains the "public-private character" of employee rights under the FLSA" and allows for the "public, including current, former, or potential employees of Defendants," to assure that employee wages are fair by virtue of public knowledge of the settlement. *Mabry*, 2015 WL 5025810, at *3.

Further, the Parties' negotiated Release is properly tailored to achieve a fair compromise for both sides. *See* Settlement Agreement at § 4 (Exhibit A). The Agreement provides that Plaintiffs release their claims:

> as asserted in this Litigation or that could have been asserted in this Litigation under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, based on the allegations in the Complaint, including any claims for the nonpayment or underpayment of wages and overtime compensation under any federal, state, or local wage and hour laws such as the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and any and all rules and regulations issued thereunder through the date on which the Court grants approval of the settlement. This release includes all claims for damages arising from any such released claims including claims for liquidated damages, penalties, interest, attorneys' fees, expenses, and costs related to such claims.

*Id.* at § 4.1 (Exhibit A). As stated on the settlement checks, the Class Members agree to release "all claims under the Fair Labor Standards Act, the wage and hour laws of Pennsylvania and all similar wage and hour, wage payment, and common law based claims, whether known or unknown, and am

enjoined from pursuing any released claims against Defendants." *Id*. at § 4.2. The release applicable to all Class Members other than the Named Plaintiffs, who have executed a general release in exchange for their additional incentive payments, permissibly limits the scope of waiver and release provisions to claims "as asserted in this Litigation" to ensure equal bargaining power between the Parties. *See Bettger v. Crossmark, Inc*., 2015 WL 279754, \*8 (M.D. Pa. Jan. 22, 2015). Accordingly, the Parties' Release is legitimately limited to further the implementation of the FLSA, and deserves this Court's approval.

## VI.    CONCLUSION

For the reasons set forth above, the Parties respectfully submit that the Court should enter their proposed Order granting the instant Motion and approving their FLSA settlement in its entirety at its earliest convenience.

Respectfully submitted,

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836

James B. Zouras
STEPHAN ZOURAS LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550

*Attorneys for Plaintiffs*

*/s/ Jeffrey R. Vlasek*
Jeffrey R. Vlasek
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214
(216) 621-0200

*Attorneys for Defendants*

Dated:  August 24, 2020

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he caused a copy of the foregoing pleading to be served upon all record counsel by electronically filing said document *via* the Court's ECF system on August 24, 2020.

*/s/ David J. Cohen*
